John Kenneth GLICK, Petitioner,

v.

Don R. ERICKSON, as the duly appointed and acting Warden of the South Dakota State Penitentiary, Respondent.

No. CIV. 73–4010.

United States District Court,
D. South Dakota,
S. D.

April 5, 1973.

Steven Jorgensen, of Willy, Pruitt, Matthews & Jorgensen, Sioux Falls, S. D., for petitioner.

Walter W. Andre, Asst. Atty. Gen., Pierre, S. D., for respondent.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

John Kenneth Glick petitions this court pursuant to Sections 2241 and 2254, 28 U.S.C., for habeas corpus relief. Petitioner Glick is presently incarcerated in the South Dakota State Penitentiary serving a ten year sentence for armed robbery. State court remedies have been exhausted by appealing his jury conviction to the South Dakota Supreme Court, which affirmed. State v. Glick, 201 N.W.2d 867 (S.D.1972).

On November 7, 1970, the Fina Gas Station at 4th Street and Main Avenue, Sioux Falls, South Dakota, was robbed of $176.23. At approximately 7:50 P.M. on the evening of November 7, 1970, a man armed with a pistol entered said gas station and demanded of the girl at-

tendant money from the cash register. Instructing the young attendant to remain in the restroom for at least ten minutes, the man fled the station. Between 8:15 P.M. and 8:45 P.M. a cab driver picked up the petitioner, John Kenneth Glick, at the Arrow Bar in Sioux Falls, two and one-half blocks from the scene of the robbery. The cab driver was directed to North Mable Avenue, stopping enroute to permit his fare to purchase a bottle of liquor. Glick's destination was 724 North Mable Avenue, the residence of Velma Kuhnert and her family.

Detective Sergeant Eugene Horst was alerted as to the robbery at approximately 9:00 P.M. by a telephone call from the Police Station. Sergeant Horst went to the Police Station where he received information that an armed robbery had occurred. He also obtained a description of the suspect and, based upon other information, proceeded to 724 North Mable Avenue accompanied by Police Officer Willard Meyer. Upon reaching the Kuhnert house Horst knocked on the door and a twelve year old girl answered. He identified himself and the girl opened the door. Immediately upon entry both law enforcement officers saw the petitioner seated at a kitchen table with a bottle of liquor on it. Horst then identified himself to the petitioner and requested that he stand and submit to a "pat and frisk" search. In the search the Detective discovered a clip containing five rounds of ammunition in Glick's right front jacket pocket, and a 32 automatic pistol stuck in the left side of petitioner's waistband. Petitioner was arrested for carrying a concealed weapon.

The petitioner's sole ground for federal habeas corpus relief is that the weapon and ammunition were admitted into evidence as a result of an illegal search and seizure in violation of the Fourteenth and Fourth Amendments to the United States Constitution. In his brief counsel for Glick asserts "(t)hat prior to searching the defendant at the residence at North Mable Avenue the of-ficers must have had probable cause to believe that the defendant committed some crime." The State maintains that not only were the gun and ammunition properly admitted, but affirmatively assert that petitioner waived his right to object to their introduction into evidence by failure to timely move to suppress such evidence before trial and to move for a voir dire hearing during trial. I find it unnecessary to rule on the waiver question in quashing the petition for habeas corpus because the pistol and ammunition were properly admitted into evidence.

Both parties cite Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968), in support of their positions. There, the United States Supreme Court focused its attention on the question "whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons unless there is probable cause for an arrest." *Id.*, 392 U.S. at 15, 88 S.Ct. at 1877. Because the conduct in this case involves a warrantless search and seizure my main concern is the reasonableness of that action. Under these circumstances, the demanding requisites of probable cause do not control. The Fourth Amendment's probable cause requirement, pursuant to the Warrant Clause, is relevant only insofar as it is a consideration in determining the permissibility or the reasonableness of the petitioner's seizure. Terry v. Ohio, 392 U.S. at 20–21, 88 S.Ct. 1868; United States v. Wickizer, 465 F.2d 1154, 1156 (8th Cir. 1972). Thus within the context of petitioner's arrest my attention is directed to the Fourth Amendment's proscription against "unreasonable" search and seizures. The dual inquiry of whether a search and seizure are "unreasonable" is "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. at 19–20, 88 S.Ct. at 1879; *See also* United States v. Wickizer, 465 F.2d 1154, 1156 (8th Cir. 1972).

Upon the state of the settled record there is no evidence elicited to inform this court how the two officers were able to find the petitioner. Nevertheless, Detective Horst and Officer Meyer obtained "other information", the veracity of which can be supported by the fact that the two law enforcement officers were able to go directly to the petitioner in a city of over 70,000 persons. State v. Glick, 201 N.W.2d 867, 870 (S.D.1972). Both investigators had knowledge of the suspect's physical appearance including a description of his clothing. Officer Meyer particularly remembered that the suspect was described as wearing a light mustache, like the petitioner's when confronted in the Kuhnert home. In addition, both law enforcement officers were cognizant of the fact that the crime had been committed with a gun.

Upon arriving at 724 North Mable Avenue, the officers gained entrance into the house. Inside the house Sergeant Horst immediately recognized the petitioner from the physical description acquired at the Police Station. The officers were warranted, as would any man of reasonable caution, in asking the armed robbery suspect before them to stand and submit to a pat and frisk search. Terry v. Ohio, 392 U.S. at 21–22, 88 S.Ct. 1868.

> The Court recognized in *Terry* that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," he may conduct a limited protective search for concealed weapons. 392 U.S., at 24 [88 S.Ct., at 1881]. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose. *Id.*, at 30 [88 S. Ct. at 1884].

Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). The search was limited to the patting of Glick's clothing to find the tell-tale hardness of concealed weapons. Once having relieved petitioner of his pistol and ammunition the search ceased, an arrest was made and Glick was removed to the Sioux Falls Police Station.

Thus I conclude that the search and seizure complained of in this petition were reasonable under the rule established in Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883:

> Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Cf.* Beck v. Ohio, 379 U.S. 89, 91 [85 S.Ct. 223, 226, 13 L.Ed.2d 142] (1964); Brinegar v. United States, 338 U.S. 160, 174–176 [69 S.Ct. 1302, 1311, 93 L.Ed. 1879] (1949); Stacey v. Emery, 97 U.S. 642, 645 [24 L.Ed. 1035] (1878). And in determining whether the officer acted reasonably in such given circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to

draw from the facts in light of his experience. *Cf.* Brinegar v. United States, supra.

It was not necessary for Detective Horst's actions to be based upon his personal observations as in *Terry* rather than on information supplied by another person. Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Acting upon information gaththered by other investigating officers, Horst and Meyer were able to apprehend the perpetrator of a violent crime within six hours of its commission.

I find that the gun and ammunition were not obtained in an illegal search and seizure in violation of petitioner's constitutional rights. It will be the order of this court that John Kenneth Glick's petition for habeas corpus relief be quashed. Counsel for Warden Erickson will submit an order in conformance with this opinion.

This memorandum decision will constitute the findings of fact and conclusions of law of this court as directed by Rule 52 of the Federal Rules of Civil Procedure.